**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **In re:**<br>**HALKER CONSULTING LLC**<br>**EIN: 20-4611545,**<br>**Debtor.** | **Case No. 17-15141-MER**<br>**Chapter 11** |

**EXPEDITED MOTION OF DEBTOR HALKER CONSULTING LLC FOR ENTRY OF ORDER AUTHORIZING IT TO PAY CERTAIN EMPLOYEE OBLIGATIONS**

Debtor and debtor in possession, Halker Consulting LLC ("Halker Consulting"), hereby seeks expedited entry of an order authorizing it to pay certain employee obligations, as follows:

## I. BACKGROUND

1. Halker Consulting and Matthew Halker, its president and sole member, each commenced cases under chapter 11 (together, the "Chapter 11 Cases") of title 11 of the United States Code (the "Bankruptcy Code") on June 1, 2017 (the "Petition Date").

2. Halker Consulting is operating its business, and M. Halker is proceeding, as debtors in possession under 11 U.S.C. §§ 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner in either of the Chapter 11 Cases. No creditors' committee has been formed in either of the Chapter 11 Cases.

3. The facts and circumstances supporting this motion are set forth in the Declaration of Matthew Halker in Support of Motion Seeking Expedited Entry of Orders Pursuant to L.B.R. 2081-1 (the "First Day Declaration"), filed contemporaneously with this motion and incorporated in this motion by reference.

**A. Halker Consulting's Employees**

4. Halker Consulting has a workforce of approximately 65 people. Of these people, 41 are directly employed by Halker Consulting (the "Employees"), and 24 people are either 1099 contractors or provided to Halker Consulting under third party staffing contracts. The relief requested in this motion only relates to the Employees and does not pertain to 1099 contractors or those provided to Halker Consulting under third party staffing contracts.[1]

5. The Employees perform a wide variety of functions critical to the administration of this chapter 11 case and Halker Consulting's successful restructuring. Their skills, knowledge, and understanding of Halker Consulting's operations and infrastructure form an essential part of preserving operational stability and efficiency. In many instances, the Employees include highly trained personnel whom Halker Consulting could not easily replace.

6. Halker Consulting is filing a proposed plan of reorganization with its petition. Under the proposed plan, Halker Consulting will pay all of its creditors in full from its ongoing operations. Because Halker Consulting is an engineering firm, its Employees are its most valuable asset. As a result, discontinuing or interrupting the services of Halker Consulting's Employees would materially impair its restructuring efforts and ability to emerge from this chapter 11 case with a full payout to its creditors.

7. At the same time, Halker Consulting's Employees rely on their compensation and benefits to pay their daily living expenses and support their families. The Employees would thus face significant financial constraints if Halker Consulting could not continue paying employee compensation, providing employee benefits, and maintaining certain programs.

**B. Employees' Wages and Salaries**

8. Halker Consulting pays wages and salaries to the Employees in arrears every two weeks. A few of the Employees have fixed salaries, but most are paid wages and salaries either on an hourly basis or on a fixed salary based on a 24-hour per week minimum work requirement with hourly pay for time in excess of 24 hours per week (collectively, the "Wages").[2]

9. Because the Halker Consulting pays its Employees in arrears, it owes its Employees accrued but unpaid Wages as of the Petition Date. Wages also may be due and owing as of the Petition Date because of, among other things, (a) potential discrepancies between the amounts paid and the amounts that Employees believe should have been paid, which, upon resolution, may reveal that the Debtors owe additional amounts to such Employees, and (b) the delay between the date when some payroll checks are issued and the date when the checks are presented to an Employee's bank for payment.

10. As of the Petition Date, Halker Consulting estimates that it owes the Employees an aggregate amount of approximately $90,728.26 on account of accrued wages and salaries earned prior to the Petition Date ("Unpaid Wages"). No Employee is owed Unpaid Wages in excess of the $12,850 priority cap set forth in section 507(a)(4) of the Bankruptcy Code (the "Priority Cap").

**C. Withholding Obligations**

11. During each applicable pay period, Halker Consulting routinely deducts certain amounts from Employees' paychecks, which may include amounts in connection with optional

---

[1] Halker Consulting is filing motions to assume its contracts with its third party staffing service providers contemporaneously with this motion.

[2] With Halker Consulting's present work load, none of its employees is currently working the minimum 24 hours per week, and most are working 40 hours or more per week.

insurance programs, optional retirement-benefit programs, optional charitable donations, garnishments, child support, and other pre-tax deductions payable pursuant to certain of the Health and Welfare Programs (as defined below) (collectively, the "Deductions") and forwards those amounts to various third-party recipients. Halker Consulting also must, in accordance with applicable law, withhold amounts related to, among other things, income taxes and Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate taxing authorities. Halker Consulting must then match the Employee Payroll Taxes from its own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "Employer Payroll Taxes," and together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes are generally processed and forwarded to the appropriate taxing authority at the same time Employees' payroll checks are disbursed. As of the Petition Date, Halker Consulting estimates that the outstanding Deductions and Payroll Taxes (collectively, the "Withholding Obligations") total approximately $15,088.72.

## D. Expense Reimbursements

12. In the ordinary course of its business, Halker Consulting reimburses its Employees for business expenses incurred in the scope of their employment (the "Expense Reimbursements"). Expense Reimbursements may include expenses for travel, lodging, transportation, professional courses and seminars, meals, membership dues for professional organizations, and other miscellaneous business-related expenses related to the discharge of an Employee's duties. Generally, the Employees incur certain Expense Reimbursements through the use of personal funds, and the Employees may be held personally liable for any unpaid obligations. Halker Consulting's inability to reimburse expenses to these Employees could

impose severe hardship on them when they incurred the obligations for Halker Consulting's benefit. As of the Petition Date, Halker Consulting estimates that the outstanding Expense Reimbursements total approximately $7,500.

**E. Employee Benefits**

13. Halker Consulting offers certain health and welfare benefits to its Employees (collectively, the "Health and Welfare Programs"). For full-time Employees, Halker Consulting provides subsidized medical, dental and vision benefits in which Halker Consulting pays 65% of the costs. Halker Consulting also funds 100% of the cost for life insurance ($15,000 policies) and long-term disability insurance for full-time Employees. Halker Consulting maintains 401K plans and ROTH plans for all Employees but does not match contributions. It also offers all Employees the ability to contribute to a health savings account and a healthcare flexible spending account. Employees currently have the opportunity to purchase additional group coverage for critical illness and accidents.

14. As of the Petition Date, Halker Consulting estimates that it owes approximately $6,800 to cover Employees' prepetition claims under the Health and Welfare Programs. The Debtors estimate that the post-petition total monthly cost related to the Health and Welfare Programs is approximately $22,000.

## II. JURISDICTION, VENUE, AND STATUTORY PREDICATES

15. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. §157 (b)(2).

16. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

17. The statutory bases for the relief requested in this motion are sections 105(a), 363, 507(a)(4) and (5), and 541 of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and L.B.R. 2081-1.

## III. RELIEF REQUESTED

18. Halker Consulting would like to minimize any impact that this chapter 11 case would have on its Employees. Halker Consulting accordingly seeks authority to meet the following obligations (collectively, the "Employee Obligations"):

- (a) continue its practices with respect to paying Wages on a postpetition basis in the ordinary course of the Debtors' business; and (b) pay the Unpaid Wages up to the Priority Cap per Employee in the ordinary course of business and consistent with past practice;
- pay any unpaid amounts due with respect to the Health and Welfare Programs and continue to provide the Health and Welfare Programs postpetition in the ordinary course of business during the administration of this chapter 11 case;
- pay in a manner consistent with historical practice any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course of business during the administration of this chapter 11 case;
- pay the Expense Reimbursements and continue the Expense Reimbursements in the ordinary course of Halker Consulting's business; and
- pay all costs incident to the Employee Obligations.

## IV. BASIS FOR RELIEF

19. Payments for Unpaid Wages and Health and Welfare Programs are entitled to priority treatment under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, and paying the unpaid amounts due for Unpaid Wages and Health and Welfare Programs would only affect the timing, not the amount, of the payment. Halker Consulting may also pay the Withholding Obligations to the appropriate entities because the Withholding Obligations are not property of Halker Consulting's estate under section 541 of the Bankruptcy Code. The Court may also

authorize Halker Consulting to pay the Employee Obligations under sections 363(b)(1) and 105(a) of the Bankruptcy Code.

**A. Unpaid Wages, Amounts Owed, for Health and Welfare Programs, and Related Costs are Entitled to Priority Under 11 U.S.C. §§ 507(a)(4) and (5)**

20. The Unpaid Wages and other claims are entitled to priority under the Bankruptcy Code. 11 U.S.C. § 507(a)(4) (providing priority to "allowed unsecured claims, but only to the extent of $12,850 for each individual . . . earned within 180 days before the date of the filing of the petition . . . for – (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual . . . ").

21. The Employees are also entitled to priority claims for Halker Consulting's contributions to the Health and Welfare Programs. 11 U.S.C. § 507(a)(5) (providing priority to "allowed unsecured claims for contributions to an employee benefit plan – (A) arising from services rendered within 180 days before the date of the filing of the petition . . . but only (B) for each such plan, to the extent of – (i) the number of employees covered by each such plan multiplied by $12,850; less (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.").

22. The Unpaid Wages and other Employee claims would be entitled to priority treatment under sections 507(a)(4) and (5) of the Bankruptcy Code, as they do not exceed the $12,850 statutory caps in any case. Halker Consulting is required to pay these claims in full to confirm its chapter 11 plan. 11 U.S.C. § 1129(a)(9)(B). Indeed, the proposed plan that Halker Consulting filed along with this motion would provide for just that. Authorizing Halker Consulting to pay the Unpaid Wages and other Employee claims would thus only affect the

timing of payment, not the amount, and would enable Halker Consulting's Employees to continue being paid in the ordinary course, rather than having to wait until confirmation. Further, paying Unpaid Wages and other Employee claims would not prejudice other creditors, who are also expected to be paid in full under Halker Consulting's plan. To the contrary, paying the Employees in the ordinary course will facilitate their continued employment with Halker Consulting, which is critical to Halker Consulting's continued business operations and ability to pay all of its creditors in full, as it proposes to do under its plan.

**B. Withholding Obligations are not Estate Property and Can be Paid.**

23. The Withholding Obligations principally represent employee earnings that governments, the Employees, and judicial authorities have designated for deduction from the Employees' paychecks. Certain Deductions like contributions to any child support and alimony obligations are not Halker Consulting's property; instead they have been withheld from the Employees' paychecks on another party's behalf. 11 U.S.C. § 541(b). Halker Consulting and its officers are also required by federal and state laws to make certain tax payments that have been withheld from the Employees' paychecks. 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting individual officers of a company may be held personally liable for failure to pay trust fund taxes). Further, because the Withholding Obligations are generally not property of Halker Consulting's estate, these obligations are not subject to the normal bankruptcy prohibitions against payment. *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998). Halker

Consulting thus seeks recognition that the Withholding Obligations are not property of its estate and, regardless of whether Withholding Obligations were collected prior to the Petition Date or after, authorize Halker Consulting to transmit the Withholding Obligations to the proper parties in the ordinary course of business. Doing so will prevent the disruption to Halker Consulting's business that would result from its failure to remit these amounts to the proper parties.

**C. Court May Authorize Relief under 11 U.S.C. § 363, Doctrine of Necessity, and its Equitable Authority**

24. Section 363 of the Bankruptcy Code provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wage claims pursuant to section 363(b) of the Bankruptcy Code). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id*. Courts have also based their authorization to approve payment of pre-petition employee claims under the "doctrine of necessity." *Id.* (citing *Miltenberger v. Logansport, C. & S.W.R.Co.*, 106 U.S. 286 (1882)).

25. The Court may further rely on its general equitable powers to authorize Halker Consulting to honor the Employee Obligations. See 11 U.S.C. § 105(a) (the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtors are not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Section 105(a) of the Bankruptcy Code

authorizes a court to "permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).

26. Paying prepetition Employee Obligations will benefit Halker Consulting's estate and its creditors by allowing Halker Consulting's business operations to continue without interruption. Employee morale and focus is critical to Halker Consulting's business and emergence from this chapter 11 case. Many of Halker Consulting's Employees would suffer personal hardship and financial difficulty if they were not paid their share of the Employee Obligations. Meanwhile, the aggregate cost to Halker Consulting of providing the Employee Obligations pales in comparison to the value generated by the Employees. The Employees' continued dedication to Halker Consulting and their work is critical to Halker Consulting continuing to provide the cash flow sufficient to keep them employed and pay all of its creditors in full under its proposed plan (in addition to its ability to continue performing during this case). Having authority to pay the Employee Obligations will help Halker Consulting retain its workforce during this chapter 11 case, continue to service its clients, and enable it to meet its projections to pay all of its creditors in full.

**D. Halker Consulting is Entitled to Immediate Relief to Avoid Immediate and Irreparable Harm Under Bankruptcy Rule 6003**

27. The Court may authorize Halker Consulting to pay the Employee Obligations within the first 21 days after the Petition Date because doing so is necessary to avoid immediate and irreparable harm. Fed. R. Bankr. P. 6003(b) (authorizing Court to issue order within 21 days after Petition Date granting motion to pay all or part of a claim that arose before the filing of the petition "to the extent that relief is necessary to avoid immediate and irreparable harm").

Immediate and irreparable harm exists where the absence of relief would impair the debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

28. As described above, the Employees are critical to Halker Consulting's continued operations and emergence from this chapter 11 case. Failure to satisfy the Employee Obligations in the ordinary course would create an undue hardship on the Employees who rely on payment of the Employee Obligations for their lives and families. As a result, unless the Court permits Halker Consulting to pay the Employee Obligations, Employee morale would suffer, and Halker Consulting could risk losing its workforce – its most valuable asset. Authorizing Halker Consulting to pay the Employee Obligations is thus necessary to avoid immediate and irreparable harm to Halker Consulting, its estate, and its creditors, and the Court may promptly grant this motion.

**E. The Court should Order Any Stay Under Bankruptcy Rule 6004(h) Inapplicable**

29. As shown above, Halker Consulting needs immediate relief to pay the Employee Obligations. To the extent that the 14-day stay under Bankruptcy Rule 6004(h) would apply to the order approving this motion, the Court has cause to order that the stay is inapplicable to its order. Halker Consulting thus requests that the Court order that any stay under Bankruptcy Rule 6004(h) does not apply.

**F. The Debtors' Reservation of Rights**

30. Nothing in this motion is intended or should be construed as an admission of the validity, priority, or amount of any specific claim against Halker Consulting, a waiver of Halker

Consulting's rights to dispute any claim, a promise to pay any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. Halker Consulting expressly reserves its right to contest any specific claim that may be related to the relief requested in this motion.

WHEREFORE, Halker Consulting respectfully requests the entry of an order in the form submitted with this motion and granting such other relief as is appropriate.

Respectfully submitted this 1st day of June, 2017.

KUTAK ROCK LLP

*/s/ Adam L. Hirsch*

Adam L. Hirsch (Colo. 44306)
Kutak Rock LLP
1801 California St., Suite 3000
Denver, CO 80202
Telephone: (303) 297-2400
Facsimile: (303) 292-7799
Email: adam.hirsch@kutakrock.com

PROPOSED ATTORNEYS FOR HALKER CONSULTING LLC AS DEBTOR AND DEBTOR IN POSSESSION